Filed 5/16/24  P. v. Dean CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F086489 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. BF126004E) |
| LAWRENCE LEE DEAN, JR., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Franson, Acting P. J., Peña, J. and De Santos, J.

# INTRODUCTION

Defendant Lawrence Lee Dean, Jr., was tried together with two codefendants on charges of criminal conspiracy and first degree murder in connection with a gang-related shooting. The jury acquitted the defendants of the conspiracy charges and convicted each of them of the lesser included offense of second degree murder. The jury also found true enhancement allegations for gang participation and use of a firearm.

After the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing pursuant to Penal Code former section 1170.95 (now § 1172.6). (Undesignated statutory references are to the Penal Code.) The court denied defendant's petition for failure to state a prima facie case. In a previous appeal, defendant argued the court erred in denying the petition without issuing an order to show cause and holding an evidentiary hearing. We reversed the trial court's order denying defendant's petition and remanded for further proceedings. On remand, the trial court found a prima facie case, issued an order to show cause, and conducted an evidentiary hearing during which it considered the transcripts of the trial and the preliminary hearing. After hearing argument, the court found defendant was guilty beyond a reasonable doubt of second degree murder under the current law and denied the petition.

On appeal, defendant's counsel filed a brief that summarized the facts, raised no issues, and stated he invited defendant to file a supplemental brief and advised him that if such a brief is not filed, the court may dismiss the matter. Defendant has not filed a supplemental brief.

We exercise our discretion to independently review the record. We have found no arguable issues on appeal and affirm the postjudgment order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, defendant and three codefendants were each charged with conspiracy to commit murder and assault with a firearm (count 1) and premeditated first degree murder

2.

(count 2) based upon their involvement in a gang-related shooting resulting in the victim's death; one codefendant eventually accepted a plea deal. Enhancement allegations were attached to each count for furthering the activities of a criminal street gang (§§ 186.22, subd. (b)(1), 190.2, subd. (a)(22)), personal and intentional discharge of a firearm with proximate causation of death (§ 12022.53, subd. (d)), and vicarious liability for such use of a firearm by a principal to the offense (§ 12022.53, subds. (d), (e)(1)).

In 2011, a jury found all three defendants not guilty of first degree murder as alleged in count 2, but convicted all three of them of the lesser included offense of second degree murder based on their involvement in the victim's death. As to defendant, the jury also found true the vicarious liability enhancement pursuant to section 12022.53, subdivisions (d) and (e)(1) and the gang enhancement pursuant to section 186.22, subdivision (b)(1). The jury acquitted all three defendants of count 1, conspiracy to commit murder and assault with a firearm.

In 2019, defendant submitted a petition for resentencing pursuant to former section 1170.95, now section 1172.6, asserting he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437). The People opposed the petition and the court denied it without holding an evidentiary hearing. In the previous appeal, our court reversed the court's order and remanded for further proceedings pursuant to section 1172.6, subdivision (c). On remand, the trial court found defendant had made a prima facie showing of entitlement to relief and set the matter for an evidentiary hearing.

Thereafter, the People filed an opposition to defendant's petition for relief, asking the court to take judicial notice of the files, records, and transcripts from defendant's trial in case No. BF126004E and of the "decision and records" in the prior appeal. (*People v. Dean* (Jan. 11, 2022, F081551) [nonpub. opn.].) Citing to trial testimony, the People noted, in part, defendant "confessed that he had personally fired a nine-millimeter

3.

handgun into the air before fleeing with the others in a van." (Boldface omitted.) After detailing certain trial testimony, they argued, "[d]efendant aided and abetted his fellow gang members, with the intent to kill, because he agreed to travel with his fellow gang members into rival gang territory, armed with firearms, after gaining knowledge of the location of rival East Side Crip gang members." They asserted defendant "was fully aware of the plan" to shoot rival gang members and "traveled with the group to the Willows and ultimately by his own admission fired a gun during the attack and pointed it at a non-gang bystander." He was also "seen carrying a firearm back to the getaway van." They further argued defendant "was also a major participant who acted with reckless indifference to human life as he was part of the planning, he was at the crime scene, he was armed with a firearm, pointed a firearm at [a bystander], and discharged a firearm during the commission of the murder." Accordingly, they argued, his petition must be denied.

Defendant also filed a brief in which he asked the court to consider statements from his interview with police, which were not admitted at trial, in which he asserted he fired a gun once into the air; he did not fire it at anyone; and he had no intent to kill anyone. Like the People, defendant asked the court to take judicial notice of the court files, records, and transcripts from the trial. He challenged the evidence that there was an announcement in the car that there were "Eastsiders," rival gang members, at "the Willows," the location of the murder; he asserted there was no evidence the victim was a rival Eastside Crip gang member. He also challenged the credibility of two witnesses and coparticipants—Charles Scott and Chad Scott. Noting the lack of a premeditation and deliberation finding, he argued, the evidence reflects "this being an incident where McDonald[, the actual killer,] was startled, panicked and began firing the .22 caliber gun he had in his possession which struck [the victim] and killed him," and "no one else in the group, including [defendant], knew what was about to occur." He also challenged the admissibility of the gang expert's opinions and the adequacy of the gang evidence,

4.

namely, evidence the six people involved in the crime were West Side Crip criminal street gang members, that the West Side Crips engaged in a pattern of ongoing criminal activity, and the sufficiency of the evidence of the predicate offenses.

At the evidentiary hearing, the court issued a written and oral ruling denying defendant's petition. Before doing so, the court granted the parties' requests to take judicial notice of the court files, records, and transcripts from the trial and it adopted the procedural summary in the People's opposition with an additional fact requested by defendant—that the jury convicted defendant of the lesser included offense of second degree murder. It explained it considered the transcripts of the trial and preliminary hearing testimony and made initial findings of fact, including that the victim died of a gunshot wound; "the .22-caliber firearm and 9 mm firearm were seized by the probation department from [codefendant] Aleric McDonalds' person and from within his mother's residence respectively during a search. Both sides also appear to agree that the .22 was the gun fired by Aleric McDonald and the 9 millimeter was fired by [d]efendant the night of the homicide." The court then summarized the testimony of multiple witnesses.

After discussing the applicable law in considering the evidence, the court explained the reasons it was denying defendant's section 1172.6 petition:

> "Defendant Dean was with a group of young men the night of November 22, 2008. Defendant and the others were members of the Westside criminal street gang. Eastsiders (another criminal street gang) and Westsiders were known rivals. The Eastsiders were known to hang out at the Willows apartment complex.

> "The group was driving around in a van that night, possibly looking for a party. While they were driving around, one of [d]efendant's co-defendants Marcus Johnson got a phone call and then told the others that there were Eastsiders in the Willows. They drove to the apartment complex and parked, and Johnson stated to the group, 'The first Eastsider we see, shoot.'

> "Marcus Johnson and Aleric McDonald put guns in their waistbands while they were still in the van but after the statement ('the first Eastsider

5.

we see, shoot') was said. The majority of the group exited the van and headed into the Willows apartment complex. They stopped, came back a bit, and were seen manipulating something in their hands. The victim, David Cambreros, who had been standing with a group of friends in the Willows, came around the corner and Aleric McDonald shot him several times. The group began running back to the van to flee. Defendant was the last one to leave and was now in possession of the 9 millimeter gun, which was previously possessed by Marcus Johnson. He fired one shot, and was confronted by Darlene Graham, a resident at the Willows. When she asked him if [that] was a real gun, Defendant replied in the affirmative, pointed the gun at her, then ran off. The one shot he fired he asserted to Detective McNeal was only shot into the air. However, the 9 millimeter bullet found in the apartment wall months later, while not tied scientifically to the shot [d]efendant fired, has similar characteristics to the bullet that would have been fired and is certainly circumstantial evidence that [d]efendant actually fired towards something or someone else and hit the wall instead. Either of these versions of the events, however, point to the fact that [d]efendant had now assumed even more of a role in this murder—he was one of the group now in possession of a firearm in order to carry out the group's mission. Aleric McDonald was the direct perpetrator in this murder as he is the one that shot David Cambreros. Defendant's conduct clearly aided and abetted in McDonald's commission of the murder. His actions are that of an aider and abettor. Defendant joined the group in the car ride around town. Defendant was a Westside gang member, a rival to the Eastside criminal street gang. Westsiders typically would not go to the Willows apartments because the Eastsiders are known to hang out there, and a Westsider would place themselves in danger by going there. Defendant knew there were two guns in the car, and when they got out of the car, Aleric McDonald and Marcus Johnson had those guns in their waistbands. He heard Johnson tell the group, 'the first Eastsider we see, shoot.' He continued into the apartment complex with the others, whom he knew to be armed. At some point in time he came into possession of the 9 millimeter gun that Johnson had been carrying. As soon as a person from the gathering at the Willows walked around the corner towards his group, McDonald followed through on the directive the group was there to carry out—the first one they see, shoot. It is immaterial whether the victim, Mr. Cambreros was an Eastsider or not. It is clear [d]efendant and his group knew Eastsiders hung out at the Willows, and it is clear they were there on a mission, not to join in a party or gathering of Eastsiders. Defendant's actions didn't end there. Once McDonald fired his weapon at Cambreros and took him down, the group began running back to the van. Defendant, the last in the line, fired the 9 millimeter weapon, most likely into the apartment complex. Yet another

6.

action showing his determination to follow through with his group's mission.

"Defendant knew that the group intended to shoot an Eastsider that night, knew the group had two weapons to accomplish that and intended to aid the shooter when he took possession of the 9 millimeter.  This hunting game [d]efendant and his friends embarked upon was surely known to him to be dangerous to human life and his actions speak with a conscious disregard for human life.  By assuming possession of the 9 millimeter and shooting the gun during the incident, he plainly demonstrated an intent to kill.

"Defendant was clearly, under current California law, beyond a reasonable doubt, an aider and abettor of the murder of David Cambreros."

## DISCUSSION

In *People v. Delgadillo* (2022) 14 Cal.5th 216, the court held that an analysis pursuant to *People v. Wende* (1979) 25 Cal.3d 436 is not applicable to a trial court's order that denies a petition for postconviction relief under section 1172.6.  (*Delgadillo*, *supra*, at p. 222.)  *Delgadillo* held that instead of using the process outlined in *Wende*, appointed counsel and the appellate court should do the following:  "When appointed counsel finds no arguable issues to be pursued on appeal:  (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter."  (*Delgadillo*, at pp. 231–232.)  "If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion.…  If the defendant does not file a supplemental brief or letter, the Court of Appeal may dismiss the appeal as abandoned.  [Citation.]  … While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."  (*Id.* at p. 232.)

7.

In this case, appellate counsel filed a brief pursuant to *Delgadillo* from the denial of defendant's petition. The brief also included counsel's declaration that defendant was advised he could file his own brief with this court. This court sent defendant an order stating that, pursuant to *Delgadillo*, the appeal may be dismissed as abandoned if he failed to submit a letter brief within 30 days. To date, he has not done so.

At an evidentiary hearing held on a section 1172.6 petition, the trial court may make factual findings and credibility determinations, and weigh evidence. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 51.) "[I]t is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. [Citations.] If the superior court finds beyond a reasonable doubt that the petitioner is guilty of murder [or attempted murder] notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "While the superior court acts as an independent fact finder in determining whether the People have met their burden, on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings. [Citation.] Under this familiar standard, '"we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citations.] Substantial evidence also '"includes circumstantial evidence and any reasonable inferences drawn from that evidence."'" (*People v. Vargas*, *supra*, at p. 951.)

Based upon our review of the record, we conclude the trial court's credibility and factual findings at the evidentiary hearing are supported by substantial evidence based on evidence that was properly admitted.[1]  Additionally, after exercising our discretion to conduct an independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The court's order denying defendant's section 1172.6 petition for resentencing after conducting an evidentiary hearing is affirmed.

---

[1]We are required to take judicial notice of "each matter properly noticed by the trial court" pursuant to Evidence Code section 459, subdivision (a), which includes the trial transcripts from defendant's original trial.